UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOE HAND PROMOTION INC., <br><br> Plaintiff, <br><br> v. <br><br> EDSCO INCORPORATED, et al., <br><br> Defendants. | : <br> : <br> : <br> : 1:19-cv-12750-NLH-JS <br> : <br> : **OPINION** <br> : <br> : <br> : <br> : <br> : <br> : |

APPEARANCES:

RYAN RICHARD JANIS
203 EAST PENNSYLVANIA BOULEVARD
FEASTERVILLE, PA 19053

    *Attorney for the Plaintiff.*

**HILLMAN**, **District Judge**

    Plaintiff, Joe Hand Promotions, Inc., filed its complaint against Defendants Jacob VanKampen and EDSCO Incorporated d/b/a/ Kelly's Bar, on May 21, 2019 for alleged satellite and cable piracy and copyright infringement.  On July 11, 2019, Plaintiff requested that the Clerk enter default against Defendants.  The Clerk entered default on July 12, 2019.  Plaintiff made a motion for default judgment on December 17, 2019.

    For the reasons stated below, the Court will grant Plaintiff's motion for default judgment.

**BACKGROUND**

Plaintiff alleges the following:[1] Plaintiff Joe Hand Promotions, Inc. ("Joe Hand"), is a Pennsylvania corporation with its principal place of business in Feasterville, Pennsylvania.  Plaintiff alleges that it specializes in distributing and licensing sporting events to commercial establishments like bars, restaurants, clubhouses, casinos, and shops.

According to Plaintiff, Defendant EDSCO Incorporated ("EDSCO") is a business entity operating an establishment called "Kelly's Bar" in Wrightstown, New Jersey.  Plaintiff alleges that Defendant Jacob VanKampen resides in New Jersey and was an officer, director, shareholder, and member or principal of EDSCO at the time of the events in question.

Plaintiff alleges that it entered into a written agreement with the owner of the copyright for "Manny Pacquiao vs. Adrien Broner" ("the Program"), which broadcast on January 19, 2019.

---

[1] The Court summarizes the relevant facts from Plaintiff's complaint, its motion for default judgment, and the affidavits filed in support of its motion.  See Lurty v. 2001 Towing & Recovery, Inc., 2019 WL 3297473, at *6 (D.N.J. Kuly 23, 2019) (explaining that in order to prove a plaintiff's entitlement to default judgment, including damages, the plaintiff, and not simply counsel, must submit to the Court an affidavit to support her claims).  As explained below, on a motion for default judgment, every "well-pled allegation" of the complaint, except those relating to damages, are deemed admitted.  Comdyne I. Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

According to Plaintiff, this agreement granted Plaintiff "the exclusive domestic license to authorize the public performance and display" of the Program at commercial establishments. Plaintiff alleges that the Program was legally available to the public only through very limited means.  Plaintiff asserts that a residential subscriber could only access the Program by purchasing it for a fee through a pay-per-view cable system. Plaintiff also alleges that interstate satellite transmissions of the Program were electronically coded or scrambled and not intended for the general public use.

   Despite this limited availability, Plaintiff alleges that the Program garnered significant media coverage and public interest, enabling Plaintiff to license the Program to over 1,500 establishments nationwide.  To get a license for this Program, Plaintiff required authorization after the payment of a licensing fee.

   Plaintiff alleges that the Program was legally available to Defendants and that Defendant VanKampen had knowledge of Plaintiff's commercial licensing requirements.  According to Plaintiff, Defendants, their agents, and their employees chose to circumvent the licensing requirements and unlawfully obtain the Program through an unauthorized signal, satellite channel or internet stream.  To do this, Plaintiff alleges that Defendants illegally misused cable and satellite services by (1)

intercepting and redirecting cable or satellite service from a nearby residence; (2) registering their business location as a residence; (3) physically moving a cable or satellite receiver from a residence to their business; and (4) obtaining the program in violation of their television service provider agreement.

Plaintiff further alleges that commercial locations exploited restricted online access to the Program in order to avoid paying the necessary commercial license fees. According to Plaintiff, individuals could stream the Program for non-commercial use through a number of online distributors for $74.99. Plaintiff asserts that these online distributors used clear language limiting the use of online streams to "residential, personal, and/or non-commercial use only." Plaintiff asserts that some commercial locations disregarded this language and purchased the Program for viewing on a personal device or in a residence and then linked this device to a commercial establishment's television screens.

By engaging in one or more of these described activities, Plaintiff alleges that Defendants paid only a nominal fee to access the Program, while Plaintiff's legitimate customers paid thousands of dollars. Plaintiff asserts that Defendants knew or should have known that their access to the Program at their establishment was not authorized.

4

Plaintiff asserts that it regularly conducts investigations to identify establishments that exhibit Plaintiff's programming without proper authorization or payment.  On the night of the Program, Plaintiff alleges that an auditor named Heather Hadry visited Defendant EDSCO and observed the Program being broadcast to patrons.  According to Hadry, Defendants' establishment had a capacity of 250 persons and she observed fifty-one patrons watching the Program on eight televisions.  Plaintiff alleges it unsuccessfully attempted to informally resolve this matter before filing this suit in May 2019.

According to Plaintiff, Defendants' actions amount to satellite piracy as defined by 47 U.S.C. § 605 and cable piracy as defined by 47 U.S.C. § 553.  Plaintiff also alleges that Defendants' unauthorized distribution of the Program constitutes copyright infringement as defined by 17 U.S.C. § 101 et seq.  Plaintiff seeks damages in the amount of $23,090.00.

## DISCUSSION

A. Subject Matter Jurisdiction

This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff has raised issues under the Copyright Act of the United States, 17 U.S.C. § 101 et seq, and the Communications Act of 1934, 47 U.S.C. §§ 533 and 605.

B. Default

The first step in obtaining default judgment is the entry of default. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the Clerk must enter the party's default." Fed. R. Civ. P. 55(a). In this case, the Clerk entered default on July 12, 2019.

C. Default Judgment

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter default judgment against a properly served defendant who fails to file a timely responsive pleading. Chanel v. Gordashevsky, 558 F.Supp.2d 532, 535 (D.N.J. 2008) (citing Anchorage Assoc. v. Virgin Is. Bd. Of Tax. Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)). However, a party seeking a default judgment is not entitled to such a judgment as a right. See Franklin v. Nat'l Maritime Union of America, 1991 U.S. Dist. LEXIS 9819, at *3-4 (D.N.J. 1991) (quoting 10 Wright, Miller & Kane, Federal Practice and Procedure § 2685 (1983)), aff'd, 972 F.2d 1331 (3d Cir. 1992). The decision to enter a default judgment is instead "left primarily to the discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

When deciding whether to grant a default judgment, "all well-pleaded allegations in a complaint, except those relating

6

to the amount of damages, are admitted as true following a default." Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1146 (3d Cir. 1990). However, the Court must still determine "whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" Chanel, 558 F.Supp.2d at 535 (citing Directv, Inc. v. Asher, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)).

"Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000); United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). If a review of the Complaint demonstrates a valid cause of action, the Court must then determine whether Plaintiff is entitled to default judgment.

D. Analysis

The Court will first address whether Defendant has demonstrated its entitlement to relief under one or more of the asserted legal claims. The Court will then analyze whether the Chamberlin factors indicate that the Court should grant Plaintiff's motion for default judgment. Finally, the Court will determine the appropriate amount of damages.

1. Whether Plaintiff has a Legitimate Cause of Action

As stated above, Plaintiff's complaint included claims under both Section 553 and Section 605 of Title 47 and a Copyright Act claim under Title 17..  Plaintiff now solely moves forward for a judgment under Section 605.  ECF No. 8-1, at 4 n. 1.  Accordingly, the Court need only address the legal sufficiency of Plaintiff's claim under that provision of federal law.

Plaintiff alleges that Defendants engaged in satellite piracy in its unauthorized exhibition of the Program.  To prevail at this stage, Plaintiff must demonstrate that: "the defendants (1) intercepted a broadcast; (2) were not authorized to intercept the broadcast; and (3) showed the broadcast to others."  J & J Sports Prods., Inc. v. Edrington, 2012 WL 525970, at *2 (D.N.J. Feb. 16, 2012).  To hold an individual (such as VanKampen) liable, Plaintiff must demonstrate that the individual has a "right and ability to supervise the violations and . . . a strong financial interest in such activities."  Joe Hand Promotions, Inc. v. Old Bailey Corp., 2018 WL 1327108, at *3 (D.N.J. Mar. 15, 2018) (quoting J & J Sports Productions, Inc. v. Ribeiro, 562 F.Supp.2d 498, 501 (S.D.N.Y. 2008)).

In this case, Plaintiff has properly alleged and provided proof of the above elements.  Plaintiff has alleged that it held

8

the exclusive rights to distribute the Program across the United States. Compl. ¶ 5. Plaintiff has further alleged that Defendants did not obtain a license to exhibit the Program. Id. at ¶¶ 9, 15. From these allegations, it is appropriate to infer that Defendants lacked authorization to broadcast the Program. Nevertheless, Plaintiff has alleged that the Program was observed being unlawfully displayed to others at Kelly's Bar by Plaintiff's auditor. ECF No. 8-1, at 4; Hand Aff. ¶¶ 13-14.

Plaintiff has also met the requirements for imposing individual liability on VanKampen at this stage. Plaintiff has alleged that VanKampen is the sole owner and operator of Kelly's Bar. Compl. ¶¶ 7-8; ECF No. 8-1, at 14. Plaintiff alleges, therefore that VanKampen had the right and ability to supervise the interception of the Program and direct financial interest in the interception of the Program, which resulted in income and profit to himself and Kelly's Bar. See Compl. ¶¶ 7-8, 14; ECF No. 8-1, at 14; Janis Aff., Exhibit B. Under the circumstances, Plaintiff has shown that VanKampen was an individual with a right and ability to supervise, and maintained a financial interest in, the operation of Kelly's Bar. See Compl. ¶¶ 7-8; ECF No. 8-1, at 14; Janis Aff., Exhibit B.

Having reviewed the Plaintiff's submissions and authority, the Court finds that Plaintiff's complaint alleges sufficient facts to support its claim of satellite piracy. Accordingly,

9

entry of default judgment is proper as to Defendants' liability for satellite piracy as defined in 47 U.S.C. § 605.

    2. Whether Plaintiff is Entitled to a Default Judgment

        a. Prejudice to Plaintiff

Plaintiff will be prejudiced if default judgment is denied, as Plaintiff will be left without recourse against these Defendants.  See Joe Hand Promotions, Inc. v. Old Bailey Corp., 2018 WL 1327108, at *2 (D.N.J. Mar. 15, 2018); see also Joe Hand Promotions, Inc. v. Batra, 2017 WL 838798, at *2 (D.N.J. Mar. 2, 2017) (stating that "without a default judgment, Plaintiff has no other means to seek relief for the harm allegedly caused by Defendants.").

        b. Existence of Meritorious Defense

"A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense."  Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 869-70 (3d Cir. 1984).  Here, the Court cannot consider Defendant's defenses because Defendant has failed to respond to this action.  See Prudential Ins. Co. of America v. Taylor, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) ("[B]ecause [Defendant] has not answered or otherwise appeared in this action, the Court was unable to ascertain whether she had any litigable defense."); see also Waster Elec. Corp. of New

10

Jersey v. Shoemaker Const. Co., 657 F.Supp.2d 545, 553 (E.D. Pa. 2009) (stating that "[b]ecause [defendants] have not asserted *any* defense, they certainly have not asserted a meritorious defense" (emphasis in original)).

Based on the papers submitted, Defendants do not appear to have a meritorious defense. Given that Plaintiff's allegations are accepted as true at this stage and that Plaintiff's allegations establish Defendants' liability, there does not appear to be a litigable defense.[2]

### c. Whether Defendant's Delay is the Result of Culpable Conduct

The Third Circuit has explained that "culpable conduct" is conduct that is "taken willfully or in bad faith." Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 123-24 (3d Cir. 1983). Plaintiff has not provided any record evidence that Defendant's actions were in bad faith. However, Defendants' failure to respond to the complaint was willful in the sense that Defendants accepted service of the complaint and have not participated in this action in any way. See, e.g., Santiago v. Lucky Lodi Buffet, 2016 WL 6138248, at *3 (D.N.J. Oct. 21, 2016)

---

[2] This Court has also noted that "as a practical matter, Section 605 is a strict liability statute." G&G Closed Circuit Events, LLC v. La Famosa, Inc., 2020 WL 3129540, at * 3 (June 12, 2020). Therefore, even if Defendants had appeared, given Plaintiff's uncontroverted evidence that the Program was shown at Jelly's bar, it is unlikely Defendants would have been able to mount any defense to liability. See id.

11

(finding that "Defendants acted culpably as they have been served with the Complaint and Defendants are not infants, otherwise incompetent, or presently engaged in military service"); see also Surdi v. The Prudential Ins. Co. of America, 2008 WL 4280081, at *2 (D.N.J. Sept. 8, 2008) (stating that "[d]efendants are presumed culpable where they have failed to answer, move or otherwise respond") (citation omitted).

Consequently, because the Court has found that Plaintiff will be prejudiced if default judgment is not granted; Defendants do not have a meritorious defense; and Defendants' failure to respond in this case is the result of its culpable misconduct, the Court will enter judgment in Plaintiff's favor.

3. Damages

In support of its motion, Plaintiff has submitted a Memorandum of Points and Authorities in support of its Motion for Default Judgment explaining the calculation of Defendants' liability as $23,090.00.  See ECF No. 8-1.

Plaintiff requests statutory damages in the amount of $4,500.00 under 47 U.S.C. 605(e)(3)(C)(i)(II).  Plaintiff alleges that had Defendants legally licensed the Program, Defendants would have paid $4,500.00.  ECF No. 8-1, at 5 (citing Plaintiff's "Rate Card", ECF No. 8-4, which contains Plaintiff's pricing for licensing).  Plaintiff argues that statutory damages are appropriate because the full extent of the profits lost, the

12

loss of good will, and additional damages sustained by Plaintiff are difficult to calculate.

Plaintiff contends that it is entitled to enhanced damages, at the Court's discretion up to $100,000 damages under Section 605(e)(3)(C)(ii). Plaintiff requests $18,000, or four times the legal licensing fee, which it believes will fairly achieve the statutory goals of restitution and deterrence. In support of its request for damages that would deter future occurrences of satellite piracy, Plaintiff asks that the Court take into consideration the difficulty in detecting violations of the Communications Act.

Plaintiff also asks the Court to take into consideration the damage done by Defendants' actions to commercial establishments that legally purchase and exhibit sporting events. Plaintiff further contends that damages are warranted because Defendants' actions and signal piracy in general erode its legitimate consumer base. Lastly, Plaintiff highlights that there is no set of circumstances under which Defendants "innocently" accessed and exhibited the Program and allege that this was not necessarily the first time Defendants had done so.[3]

---

[3] Plaintiff included an advertisement on Defendants' Facebook account. Plaintiff alleges that this advertisement shows that Defendants illegally broadcast another sporting event on August 26, 2017. ECF No. 8-7.

13

Plaintiff also asserts that under § 605(e)(3)(C)(ii), a court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Plaintiff has stated its costs as $590.00. Plaintiff's attorney has submitted an affidavit in support of its application for costs. ECF No. 8-6 (stating that Plaintiff incurred costs of $400.00 to file this action and $190.00 to effectuate service).

Plaintiff has not yet determined the amount of attorneys' fees. See ECF No. 8-1, at 15 (listing Attorney's Fees as "$ TBD"). Because Plaintiff has not provided any information with regards to attorney's fees, the Court will not count these undetermined fees as part of Plaintiff's damages at this stage. See Comdyne I, Inc., 908 F.2d at 1146 (holding that when deciding whether to grant a default judgment, "all well-pleaded allegations in a complaint, except those relating to the amount of damages, are admitted as true following a default"). Plaintiff may seek attorneys' fees in an amount to be determined in a supplemental submission before final judgment is entered.

Adding together the sums for statutory damages under § 605(e)(3)(C)(i) and § 605(e)(3)(C)(ii) and costs, the Plaintiff's damages total $23,090.00.

**CONCLUSION**

For the reasons stated above, the Court will grant Plaintiff's motion for entry of judgment by default and calculates the amount of $23,090.00 in damages and costs. However, before final judgment is entered, Plaintiff will be granted leave to submit an application for reasonable attorney's fees under the statute within twenty (20) days of this Opinion.

An appropriate order will follow.


Date: July 28, 2020           s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.